UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CITIZENS BANK OF RHODE ISLAND,<br>Plaintiff,<br>v.<br>QWEST COMMUNICATIONS CORPORATION,<br>Defendant. | C.A. No. 05 249 S |

**ANSWER AND COUNTERCLAIMS**

Defendant, Qwest Communications Corporation ("Qwest"), as and for its answer to the Complaint for Declaratory Judgment (the "Complaint") and counterclaims, alleges:

1. Qwest admits the allegations of paragraph 1 upon information and belief.

2. Qwest admits the allegations of the first sentence of paragraph 2. With respect to the second sentence of paragraph 2, Qwest admits that it is a telecommunications company and states that the remaining allegations in the sentence constitute conclusions of law to which no response is required.

3. The statements in paragraph 3 constitute conclusions of law to which no response is required. Further answering, Qwest states that it does not contest jurisdiction.

4. The statements in this paragraph constitute a characterization of this action to which no response is required. To the extent any response is required, the allegations of paragraph 4 are denied, except to the extent it is alleged that there exists a justiciable controversy between the parties concerning their respective rights and obligations under the relevant contract.

which Qwest admits.

5. Qwest admits the allegations of the first sentence of paragraph 5 upon information and belief. With respect to the second and third sentences, Qwest admits upon information and belief that the document attached as Exhibit A to the Complaint is a copy of the agreement executed on behalf of Citizens, states that the document speaks for itself, and denies the remaining allegations. Qwest denies the allegations of the fourth sentence of paragraph 5.

6. With respect to the first sentence of paragraph 6, Qwest admits that it received a copy of the parties' agreement executed by Citizens and that it was executed by Ms. Dillon on behalf of Qwest in accordance with the parties' agreement. Qwest is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the first sentence of paragraph 6. With respect to the second sentence, Qwest admits that it received a copy of the parties' agreement executed by Citizens. Further answering, Qwest states that it executed the agreement, including by "check[ing] off a box" indicating an initial three-year term, in accordance with the parties' agreement. Qwest denies the remaining allegations, if any, of the second sentence of paragraph 6. Qwest denies the allegations of the third sentence of paragraph 6. With respect to the allegations of the fourth sentence, Qwest states that the document attached as Exhibit B to the Complaint is a copy of the parties' agreement, which speaks for itself, and it denies the remaining allegations in the sentence.

7. Qwest denies the allegations of the first sentence of paragraph 7. Qwest denies the allegations of the second sentence of paragraph 7. Further answering, Qwest states that after Citizens failed to make payments due under the parties' agreement, Qwest ceased providing telecommunications services to Citizens. Qwest is without knowledge or information sufficient

to form a belief as to the truth of the allegations of the third sentence.

8. Qwest denies the allegations of the first sentence of paragraph 8, but admits that it indicated that Citizens had breached. Qwest admits the allegations of the second sentence of paragraph 8. Qwest admits that Citizens makes the alleged denial and assertion.

9. Qwest admits that it send Qwest a notice, which speaks for itself, on or about the date alleged, and refers to the notice for its content.

10. Qwest admits that the Guaranteed Service Agreement contains a clause that references arbitration and denies that such agreement was terminated in July 2003. The remaining statements in paragraph 10 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. Further answering, Qwest states that it too waives its rights under the arbitration provision.

11. Qwest admits that there exists a controversy between the parties, but denies the remaining allegations of paragraph 11.

## Affirmative And Separate Defenses

### First Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Defense

Citizens, by its own actions and omissions, is equitably estopped from recovering judgment against Qwest.

### Third Defense

By its own actions and omissions, Citizens has waived its right to bring the claims asserted in the Complaint.

Fourth Defense

Citizens' claims and demand for declaratory judgment are barred, in whole or in part, by Citizens' breach of its obligations under the Agreement.

Fifth Defense

Citizens' claims against Qwest are barred by Citizens' unclean hands.

Sixth Defense

Citizens fraudulently made material misrepresentations to Qwest upon which Qwest relied to its detriment, thereby precluding any recovery by Citizens.

**Counterclaims**

Parties and Jurisdiction

1. Plaintiff-in-counterclaim, Qwest Communications Corporation ("Qwest"), is a Delaware corporation with its principal place of business at 1801 California Street, Denver, Colorado.

2. Defendant-in-counterclaim, Citizens Bank of Rhode Island ("Citizens"), is, upon information and belief, a Rhode Island financial institution with its principal place of business in Providence, Rhode Island.

3. This Court has original jurisdiction over this counterclaim pursuant to the provisions of 28 U.S.C. §1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

General Allegations

4. In or about the late Spring or early Summer of 2001, Qwest received numerous requests for pricing quotes from Citizens regarding ATM telecommunication connection services

for locations in Providence, Rhode Island, Melrose, Massachusetts, Philadelphia, Pennsylvania, and Pittsburgh, Pennsylvania (the "Services").

5. Thereafter, Stephen Lynch, Ken Anketell, Art Greenwald, and/or Tim Wells, on behalf of Citizens, entered into negotiations with Patricia B. Dillon of Qwest regarding various packages for the Services, with the pricing varying depending on minimum monthly usage commitments and term commitments.

6. Qwest sent Citizens numerous quotes and pricing structures for the Services based on one, two, and three year term commitments and various monthly usage commitments, with the highest pricing for a particular usage commitment correlating with a one year commitment and the lowest pricing correlating with a three year commitment.

7. On or about October 31, 2001, the parties executed a Qwest Communications Corporation Q Guaranteed Service Agreement (the "Agreement"), a copy of which is attached as Exhibit B to the Complaint. The initial term of the Agreement was three (3) years.

8. Under the Agreement, either party could terminate it at the end of the initial three year term, but not before then without recourse, by providing written notice at least thirty days prior to the conclusion of the three year term. The Agreement expressly provided that in the event the Agreement was not terminated in this fashion in advance of the expiration of the three (3) year initial term, it would automatically renew for a second three (3) year term.

9. During the negotiations leading up to the Agreement, Qwest made clear to Citizens, and Citizens understood, that the discounts being offered varied according to the commitment as to minimum monthly usage and term. Citizens specifically understood that specific rates would be charged for a $50,000 per month minimum usage commitment coupled

with a three (3) year term commitment, and it expressly requested, agreed to, and was charged such rates.

10. At all times material hereto, Qwest relied on the superior knowledge of and statements made by Citizens regarding the term sought by Citizens, and relied upon such knowledge and statements in pricing the Service package offered to Citizens.

11. After the parties entered into the Agreement, subsequent orders for additional services, signed on behalf of Citizens, continued to reflect the three (3) year term and $50,000.00 minimum monthly volume commitment set forth in the Agreement.

12. In or about July 2003, Citizens began to fail to perform its obligations under the Agreement, and since then has failed to make the minimum monthly payments due under the Agreement.

13. At all relevant times, Qwest performed its obligations under the Agreement.

<u>Count I</u>

(Breach of Contract)

14. Qwest repeats and incorporates by reference the allegations contained in paragraphs 1-13 herein.

15. The Agreement executed by Qwest and Citizens is an enforceable contract.

16. Under the express terms of the Agreement, Citizens agreed to pay Qwest a minimum of $50,000.00 per month for three (3) years and, in the event the Agreement was not effectively terminated, to continue to pay such amount for an additional three (3) years.

17. Citizens breached the Agreement by failing to make the required payments for the initial three-year term and during the second three year term.

18. At all relevant times, Qwest complied with and fulfilled its obligations under the Agreement.

19. As a result of Citizens' breach of contract, Qwest has been damaged in an amount in an amount to be proven at trial.

Count II

(Unjust Enrichment)

20. Qwest repeats and incorporates by reference the allegations contained in paragraphs 1-19 herein.

21. Qwest provided services to Citizens at discounted rates based on Citizens' commitment to a $50,000.00 minimum monthly usage and three (3) year term, with the belief that the Services would be provided, and the minimum monthly payments made, for at least three years.

22. Citizens accepted the Services provided by Qwest at the $50,000.00 minimum monthly volume rate, which was based on a three (3) year initial term, even though, upon information and belief, it did not intend to perform its obligations under the Agreement for the full three (3) year initial term. Citizens therefore has been unjustly enriched.

23. Qwest offered to provide, and did provide, Citizens with the Services at discounted rates with the expectation that Citizens would continue to receive, and to pay for, services at the $50,000 per month minimum for at least thirty-six (36) months.

24. The Services provided to Citizens by Qwest have a reasonable value that can be determined.

## Count III

(Fraudulent Inducement)

25. Qwest repeats and incorporates by reference the allegations contained in paragraphs 1-24 herein.

26. In negotiating with Qwest for the Services to be provided by Qwest, Messrs. Greenwald and/or Wells, on behalf of Citizens, met with Ms. Dillon, on behalf of Qwest, at Citizens' offices on several occasions in late October 2001. During those meetings, Messrs. Greenwald and/or Wells represented to Ms. Dillon that Citizens wanted a guaranteed service agreement with Qwest based on a minimum monthly volume rate of $50,000.00 for a three (3) year term.

27. In or about early November 2001, after the Agreement had been executed, Messrs. Greenwald and/or Wells, on behalf of Citizens, met with Ms. Dillon and/or Martha Fairhurst, on behalf of Qwest, at Citizens' offices to discuss the Services. During that meeting, Messrs. Greenwald and/or Wells confirmed to Ms. Dillon and/or Ms. Fairhurst that they understood that the rates they were being offered were based on a minimum monthly volume rate of $50,000.00 and a three (3) year term.

28. Qwest reasonably relied upon the representations made on behalf of Citizens in providing the Services to Citizens at the discounted rates. Indeed, subsequent orders for additional services, signed on behalf of Citizens, continued to reflect the term and volume commitments that Messrs. Greenwald and/or Wells confirmed to Qwest.

29. The statements made by Messrs. Greenwald and Wells, on behalf of Citizens, committing to a three (3) year term for the Services, were fraudulent because, upon information

and belief, they were made with the intent to induce Qwest to provide the Services to Citizens at discounted rates for a three (3) year term, but with no intent to pay for the Services for a three (3) year term. Citizens' conduct in failing to perform its obligations under the Agreement, as well as the allegations made by Citizens in the Complaint, further indicate that the statements made on behalf of Citizens were false when they were made.

30. As a result of the aforesaid fraud, Qwest has sustained damages.

WHEREFORE, Qwest respectfully demands judgment:

1. on Citizens' claim, declaring that the initial term of the Agreement was three years, that the Agreement was not terminated, that the Agreement therefore has been renewed for an additional three (3) year term, and that Citizens is liable to Qwest for full performance for the full three (3) year initial term and an additional three (3) year term and for all damages occasioned by Citizens' refusal to perform;

2. on Count I of the counterclaims, in Qwest's favor and against Citizens for damages based upon Citizens' breach of the Agreement, in an amount to be determined at trial;

3. on Count II of the counterclaims, in Qwest's favor and against Citizens for damages based upon the unjust enrichment of Citizens resulting from its receipt of services on a short-term basis at a rate discounted for a three (3) year term, in an amount to be determined at trial;

4. on Count III of the counterclaims, in Qwest's favor and against Citizens for damages to compensate Qwest for its actual pecuniary loss sustained as the result

of Citizen's fraudulent conduct, as well as punitive damages, in an amount to be determined at trial; and

5. for such other and further relief as the Court deems to be just and proper, including interest, costs, and reasonable attorneys' fees.

**Demand For Trial By Jury**

Qwest demands a trial by jury on all issues so triable.

Dated: June 16, 2005

QWEST COMMUNICATIONS CORPORATION,

By its Attorneys,

JAMES H. REILLY #0658
DONALD MARONEY # 3737
KELLY, KELLEHER, REILLY & SIMPSON
146 Westminster Street, Suite 500
Providence, RI 02903
(401) 272-1312

***CERTIFICATION***

TO: Steven E. Snow, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

I hereby certify that I mailed a true copy of the within to the above counsel of record by first class mail, postage prepaid, on the 16th day of June, 2005.

Daniel J. [signature]